libel, and relied on at the hearing, is that they were not entered on such a manifest as is required by the act of March 2, 1799, § 24 [1 Stat. 646], the general collection law which has been in force and in constant use from the time that it was passed. The cigars were entered on a manifest deliverable to order, but it is plain that it was not a manifest containing all the particulars required by that law, and it was scarcely contended at the argument that it was. But the goods were on board the vessel without a bill of lading or an invoice, which alone would awaken very lively suspicions. According to the decision in The Larch [Case No. 8,085], in such a case, as to cigars they must be deemed consigned to the master, though entered as consigned to a particular person, much more when entered as consigned to order generally. But, besides, the entry on the manifest is suspicious on its face. It appears in a different ink from the general entry on the manifest, and seems to have been entered at a different time, and was so testified to by experts. If consigned to the master they are forfeited by that act.

There is a considerable amount of testimony taken in this case, with reference to what took place on the island of Cuba, both by the United States and the claimant, in the first instance to prove or render probable, a premeditated design to smuggle the cigars, and in the second place, to account for the want of a bill of lading and invoice for the cigars, from the circumstances under which the claimant became the owner of them. This testimony is, in some respect, contradictory. I have thought it unnecessary particularly to examine it, as I think there was a forfeiture under the count stated. It could not avail the claimant, even on his interpretation of it, except in an equitable view, and these considerations are addressed to another department and not to the court, and when fairly considered it leaves the claimant under a cloud of suspicion not very favorable to his claim. Decree of forfeiture.

---

## Case No. 16,465.

UNITED STATES v. THIRTY–NINE TRUNKS.

[See Case No. 15,885.]

---

## Case No. 16,465a.

UNITED STATES v. THIRTY–ONE BOXES, etc.

[Bett's Scr. Bk. 163.]

District Court. S. D. New York. July 7, 1833.

VIOLATIONS OF CUSTOMS LAWS—FRAUDULENT ENTRIES—FORFEITURES—FALSE DESCRIPTIONS—ANCHOR IRON, BOLT IRON, AND CABLES.

[1. In section 4 of the act of May 28, 1830 [4 Stat. 410], which declares, among other things, that if any package or invoice "be made up with intent, by false valuation or extension, or otherwise," to evade or defraud the revenue,

the same shall be forfeited, the words "or otherwise" are to be construed as applying only to cases of the same character with those enumerated, and not to any of a different and independent description. They would include, however, an attempt to enter anchors or bar iron as "anchor iron," parts of chain cables as "links," and bolt iron as "straight links," if this were done with intent to evade or defraud the revenue.]

[2. Pieces of hammered iron two feet long, six and three quarters inches square at one end, and tapering to one and a half inches at the other, which are prepared in this form for the purpose of being welded together to make anchors, are not subject to forfeiture under the statute for being entered in the invoice as "anchor iron": it being shown that they are known under this term in trade and commerce, and that they could not properly be described either as "anchors" or as "bar iron".]

[3. Pieces of round iron cut in suitable lengths, some being straight and others curved or bent to a U shape, and which are adapted to be formed into the links of cables, are properly invoiced as "straight, bent, and turned links," respectively, it appearing that they are known under those terms in trade and commerce.]

[4. In the description "cables and parts thereof" as used in the act of 1824, the words "parts thereof" apply only to parts of cables which retain the properties of complete cables, that is, to a number of links connected together, so as to form part of a chain, and not to single detached links, though complete as such; and especially not to pieces of round iron cut to the proper length, and which are either straight or partially bent into shape, but not welded together, so as to form completed links.]

[5. The statute of 1830 does not subject goods to forfeiture merely because the importer has attempted to enter them at a rate of duty less than that to which they are ultimately found to be liable, when there is in fact no false description of them with intent to defraud the revenue.]

[6. The fact that the public appraisers and two merchants sworn to assist in the examination of the goods report that in their opinion an importation and entry was fraudulently made with intent to evade payment of the proper duties, and recommend the seizure thereof, is sufficient ground for granting a certificate of probable cause of seizure, although it is held that there is no ground of forfeiture.]

[This was a libel of forfeiture against certain boxes and packages of imported articles, alleging a false and fraudulent invoice and entry, with intent to evade payment of the proper duties.]

These articles were imported in the Wm. Byrnes from Liverpool, and invoiced, 29 boxes bent links, 2 boxes straight links, 42 packages twin links, and 10 pieces of anchor iron, with their respective weights, cost, &c. The importer, by his attorney, John [F.] Sarchet, claimed to enter them at the custom house at 15 per cent. ad valorem under the act of 1816, as non-enumerated articles manufactured in part—and denied that they were a complete manufacture of iron, which pays 25 per cent. ad valorem. Attached to and forming part of the invoice, was the affidavit of the shipper at Liverpool that he was in the habit of receiving and giving orders for links and anchor iron, and that they were the articles